**Robert C. MENTION, et al.,**
**Plaintiffs/Appellees,**

v.

**Henry Brandt GESSELL, et al.,**
**Defendants/Appellants.**

No. 82–3249.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 7, 1983.

Decided Aug. 26, 1983.

James H. Marvin, Schouboe, Marvin & Furniss, P.C., Portland, Or., for defendants/appellants.

James N. Westwood, Portland, Or., for plaintiffs/appellees.

Before KENNEDY, TANG and POOLE, Circuit Judges.

TANG, Circuit Judge:

The Oregon architectural firm of Mention, Hanns, and Lindburg (MHL) alleged common law copyright infringement against Gessell, Smith, and Mosman (GSM) of Washington, based on GSM's copying and use of MHL's plans and drawings for construction of migrant labor housing. A jury found for MHL and awarded damages of $95,755. The district court denied GSM's motions for a judgment notwithstanding the verdict or new trial. We reverse, since MHL's claim was barred, in whole or in part, by the statute of limitations, and was preempted in part by the federal Copyright Act of 1976.

*Background*

Mention, Hanns, and Lindburg (MHL) are partners of a Salem, Oregon, architectural firm. MHL contracted in 1974 with the Marion County Housing Authority in Oregon to design migrant labor housing. The housing was financed by the Farmers Home Administration (FmHA). The contract was based on architectural plans and drawings developed by MHL in 1974–75. Thirty sets of plans were subsequently sent to various parties, including potential contractors and subcontractors, a copying service, plan exchange centers, several state and county agencies, municipalities, and the FmHA. The Marion County Project was completed in 1975.

Gessell, Smith, and Mosman (GSM) are partners of a Walla Walla, Washington, architectural firm. GSM contracted in 1974 with the Walla Walla County Housing Authority in Washington to design migrant labor housing, again financed by the FmHA. GSM's first two proposals in 1975 were rejected due to excessive cost factors. In February, 1976, GSM was furnished with a floor plan print for migrant labor housing during a Walla Walla County Housing Authority meeting. The print was from one of MHL's plan sets. The FmHA subsequently furnished GSM with one of the Oregon firm's complete plan sets. Both the Walla Walla County Housing Authority and the FmHA indicated that the prints represented projects acceptable in the past to the FmHA.

The Washington firm used the prints in preparing their third proposal, which was accepted in 1976 by the FmHA. This project is referred to as "Phase I," and was constructed by the County in 1976. The Walla Walla County Housing Authority again retained GSM in 1978 for "Phase II" of the housing project. The Phase I design work was used as a "schematic concept" in the application to FmHA for Phase II funds in the fall of 1978. Beyond that, the preliminary work for Phase II, which was done during work on Phase I, was later discarded due to a site change. The Phase II plans were based on the Phase I schematic design drawings, which consisted of clusters of fourplex units designed for privacy, efficiency, liveability, and to reduce building costs. GSM contends that the actual plans for Phase II were arrived at without refer-

ence to the Phase I plans. The FmHA accepted the Phase II proposal, and construction was begun in December, 1978.

In the summer of 1978, the Oregon firm learned of the Walla Walla project and GSM's design. MHL filed their 1979 action against GSM for common law copyright infringement in the U.S. District Court of Oregon. A jury returned a verdict for MHL, and awarded damages of $95,755. The trial court denied GSM's motions for JNOV or a new trial. We reverse the district court since we find that MHL's claim was barred, in whole or in part, by a statute of limitations defense, and was preempted in part by the federal Copyright Act of 1976.

*Statute of Limitations*

The statute of limitations issue has two components. Which statute of limitations applies? When did the statute commence running?

Since this is an action for common law copyright infringement, reference must be made to the applicable state statute of limitations. Oregon supplies that law since the copyright owner's domicile controls for choice of law determinations. *See Granite Equip. Leasing Corp. v. Hutton,* 84 Wash.2d 320, 525 P.2d 223 (1974); *Buresh v. First Nat'l Bank,* 10 Or.App. 463, 500 P.2d 1063 (1972). Both contract and tort statutes of limitations were presented to the district court. The court did not make a ruling as to which statute was applicable.

Appellees-MHL maintain there is no time bar problem, since the applicable statute is O.R.S. § 12.080, a six-year contract statute of limitations. Application of that statute requires that suit have been commenced by 1982, at the earliest; suit was filed herein in 1979. MHL argues that the contract statute governs this action since their claim was quasi-contractual, in that they sought damages under an unjust enrichment theory.

We disagree with MHL, and find that this action is governed by O.R.S. § 12.110, a two-year tort statute of limitations. Oregon recognizes that it is the gra-

vamen or predominant characteristic of the action, not plaintiff's election of remedies, which governs whether an action is one in contract or tort for purposes of determining the applicable statute of limitations. *Lindemeier v. Walker,* 272 Or. 682, 538 P.2d 1266 (1975). The gravamen of this action is one for misappropriation of intellectual property rights, and is a tort. *See* 3 Nimmer on *Copyright,* § 12.05 n. 1 (1982).

We next must determine when the tort statute of limitations commenced to run. O.R.S. § 12.010 states that actions shall only be commenced "after the cause of action shall have accrued, except where a different limitations is prescribed by statute." The tort statute of limitations contains a "different limitation" only with respect to actions based upon fraud or deceit, which is not alleged herein. Thus, the question is when did the cause accrue? Appellees-MHL argue that the cause did not accrue until they had knowledge of the infringement in 1978, and thus the 1979 suit poses no time bar problem. We reject that argument. Oregon, like other jurisdictions, holds that causes accrue when and where the acts occurred which created the right. *See Bergman v. Inman,* 43 Or. 456, 73 P. 341 (1903). The alleged infringing acts occurred herein when GSM copied the architectural plans and drawings of MHL in 1976 and 1978.

The question remains whether the two-year statute of limitations bars all or part of the claim. If the alleged infringing activities are viewed as one continuous undertaking, because GSM's 1978 actions in Phase II constituted an ongoing misappropriation which began in 1976 in Phase I, then the entire claim would be barred. On the other hand, if the alleged infringing activities are viewed as two separate undertakings, first in 1976 with Phase I and again in 1978 with Phase II, then only the claim arising from the 1976 acts would be barred. The district court did not instruct the jury on making factual findings as to whether there were one or two phases. We need not remand for a determination of that issue, though, since we hold that: (1) if only one misap-

propriation occurred, it was barred by the two-year statute of limitations since the cause accrued in 1976 and suit was not commenced until 1979; and (2) if two misappropriations occurred, the 1976 cause was barred by the statute of limitations, and the 1978 cause was preempted by the federal Copyright Act of 1976, an issue to which we now turn.

*Federal Copyright Act of 1976*

The Copyright Act of 1976 preempts common law copyright claims, unless the claims arose from "undertakings commenced before January 1, 1978." 17 U.S.C. § 301(b)(2). Appellants-GSM argue that Phase II work was not contracted for until December, 1978, and thus any alleged copying activities were not undertakings commenced before January 1, 1978. Therefore, GSM argues, common law copyright protection was not available to MHL for claims arising from any Phase II misappropriation.

GSM first raised the preemption issue in the context of a motion in limine, seeking to exclude evidence of Phase II on the basis of relevancy. The district court denied the motion and admitted the evidence because the court was not certain whether a federal preemption defense existed.

The trial court eventually addressed the preemption issue in the context of the interrogatory verdict form. The second question submitted to the jury stated: "Did the defendants copy plaintiffs' plan?" The court originally proposed to separate this into Phases I and II, but later decided not to separate the phases. The trial court did not state its reasoning, but MHL had objected to separation on three theories: (1) the reference to "undertaking" in 17 U.S.C. § 301(b)(2) means that all copyrightable works created before 1978 retain common law protection, regardless of when the alleged misappropriation occurred; since MHL's work was created in 1976, federal preemption is inapplicable; (2) that federal preemption was a legal question not properly before the jury; and (3) in any event, only one claim or undertaking arose out of defendants' actions since Phase II in 1979 was a continuation of defendants' Phase I misappropriation in 1976.

We disagree with MHL and find that, assuming Phase II constituted a separate cause of action, MHL's claim was preempted by the Copyright Act of 1976.

Common law copyright claims are preserved under the 1976 Copyright Act where the claims arose from "undertakings commenced before January 1, 1978." Claims arising from infringing activities are "undertakings." In this case, the alleged infringing activities occurred in the fall of 1978, during Phase II activities and thus were not "commenced before January 1, 1978." Thus, claims arising thereunder were barred by the Act as a matter of law. *See Strout Realty, Inc. v. Country 22 Real Estate Corp.,* 493 F.Supp. 997 (W.D.Mo. 1980); 1 *Nimmer on Copyright* § 1.01[B] n. 116 (1982).

The judgment of the district court is hereby

REVERSED.